IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TRACEY BAUM, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. A. No. 18-0777 |
| | ) ) ) ) | District Judge Marilyn J. Horan Magistrate Judge Lisa Pupo Lenihan |
| ADT LLC d/b/a ADT SECURITY SYSTEMS, and PROTECT YOUR HOME, | ) ) ) | |
| Defendant. | ) | ECF No. 12 |

## MEMORANDUM ORDER

Plaintiff Tracey Baum ("Plaintiff") brings this action against Defendant ADT LLC ("Defendant") alleging one count for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). (Am. Compl., ECF No. 3.) Presently before the Court is Defendant's Motion to Stay. (Mot., ECF No. 12.) For the reasons set forth below, Defendant's Motion is **DENIED**.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

According to the Amended Complaint, on or around June 2017, Defendant began calling Plaintiff's cellular telephone. (ECF No. 3 ¶ 6.) When Plaintiff answered the calls, she heard a prerecorded message requesting a call back regarding some important information. (*Id.* ¶ 8.) Plaintiff never had a business relationship with Defendant, and she never provided her telephone number to Defendant or consented to be contacted. (*Id.* ¶ 9–11.) Plaintiff alleges that the telephone calls were made by Defendant "using an [automatic telephone dialing system] or predictive dialer and/or by using a prerecorded or artificial voice." (*Id.* ¶ 14.)

On August 23, 2018, about a month after Plaintiff filed her Amended Complaint, Defendant filed the pending Motion to Stay, arguing that this Court should stay the case pursuant to the doctrine of primary jurisdiction or, alternatively, the Court's inherent power to control its docket pending the Federal Communications Commission's ("FCC") anticipated ruling regarding the meaning of "automatic telephone dialing system" ("ATDS"). (Br. in Supp. of Mot. to Stay, ECF No. 13, at 1.) Defendant filed a brief in support of its Motion (ECF No. 13) and accompanying Declarations (ECF Nos. 14, 15). Plaintiff responded in opposition (ECF No. 17), and Defendant replied (ECF No. 20).

## III.    LEGAL STANDARD

### A. Doctrine of Primary Jurisdiction

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956). In cases where resolution of issues before the Court "have been placed within the special competence of an administrative body," the judicial process is stayed "pending referral of such issues to the administrative body for its review." *Id.* at 64. The Court of Appeals for the Third Circuit has relied on a four-factor test for determining whether a district court should stay a case under the doctrine of primary jurisdiction. *Raritan Baykeeper v. NL Indus.*, 660 F.3d 686, 691 (3d Cir. 2011).

> Those factors are: (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Id.*

### B. Court's Inherent Power to Control its Docket

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket. . . ." *Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir. 1988) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A court's power to grant a stay pursuant to this inherent power is "firmly within the discretion of the court." *Golden Gate Nat'l Senior Care, LLC v. Spoone*, No. 17-cv-180, 2018 U.S. Dist. LEXIS 8644, at *3 (W.D. Pa. Jan. 19, 2018) (quoting *First Am. Title Ins. Co. v. Maclaren, LLC*, No. 10-cv-363, 2012 U.S. Dist. LEXIS 31508, at *13 (D. Del. Mar. 9, 2012)).

> In determining whether a stay of the litigation is appropriate, a court must balance the interests favoring a stay against the interests frustrated by the granting of a stay. In doing so, a court should consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and whether a trial date has been set. A court may also consider (5) the length of the requested stay. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of the Court's discretion to issue a stay.

*Golden Gate Nat'l Senior Care*, 2018 U.S. Dist. LEXIS 8644, at *3 (internal quotations and citations omitted).

## IV. ANALYSIS

Defendant asserts that whether it used an ATDS to contact Plaintiff will be the central, if not dispositive, issue in this case. (ECF No. 13, at 2.) Defendant further argues that if it were to have used an ATDS, whether it could meet the "reasonable reliance" standard under the TCPA may also dictate its ultimate liability. (*Id.*) Because the FCC is currently reviewing the

3

regulations surrounding the definitions of "ATDS"[1] and "reasonable reliance,"[2] Defendant urges this Court to stay the litigation pending the FCC's review of these issues. (*Id.*) Plaintiff opposes the stay, arguing an indefinite stay will not impact Plaintiff's factual allegations and any future FCC rules will not significantly alter fact discovery. (ECF No. 17, at 1.)

### A. Doctrine of Primary Jurisdiction

The Court concludes that Defendant has not demonstrated the applicability of the primary jurisdiction doctrine to this case.

Here, the first factor presents the biggest obstacle to abstention under primary jurisdiction. "The first factor focuses on the competence of the court and the agency to address the matter." *Baykeeper*, 660 F.3d 686 (3d Cir. 2011). When the disputed issue is "clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute," the Court should refer the matter to the agency, but an agency's expertise is not a talisman to strip the court of jurisdiction. *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1105 (3d Cir. 1995). Defendant urges this Court to reject Plaintiff's argument that

---

[1] This year, the United States Court of Appeals for the District of Columbia set aside the FCC's 2015 declaratory ruling regarding what constitutes an ATDS. *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). "After the *ACA* ruling, a collection of trade groups and other organizations filed a petition for a declaratory ruling with the FCC." *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306, 2018 U.S. Dist. LEXIS 113125, at *5 (N.D. Cal. July 2, 2018). For a copy of the Joint Trade Petition, see Defendant's Exhibit B to its Brief in Support (ECF No. 13-2). "[T]he FCC issued a Public Notice on May 14, 2018 seeking comment on what constitutes an automatic telephone dialing system." *Pieterson*, 2018 U.S. Dist. LEXIS 113125, at *5 (internal quotations omitted); *see* Notice, 83 Fed. Reg. 26,284 (June 6, 2018). On September 20, 2018, the United States Court of Appeals for the Ninth Circuit decided *Marks v. Crunch San Diego*, --- F.3d ---, 2018 WL 4495553 (9th Cir. 2018), in which the court analyzed the statutory definition of ATDS post-*ACA*. This prompted the FCC to issue another Notice, seeking further comment on what constitutes an ATDS under the TCPA. *See* CGB Seeks Further Comment on TCPA in Light of Ninth Cir Marks Decision (Oct. 3, 2018), https://www.fcc.gov/document/cgb-seeks-further-comment-tcpa-light-ninth-cir-marks-decision.

[2] The May 14, 2018, Notice also seeks comment on the TCPA's "reasonable reliance" approach in the context of reassigned numbers. 83 Fed. Reg. 26,284–85.

because the forthcoming rulings are not matters of first impression[3] the Court should not stay the litigation because *Baykeeper* did not explicitly list "matters of first impression" among the factors. But whether courts have tackled the issue before goes directly to whether this judicial court could competently address the same matter in the case before it now.

In analyzing this exact issue—whether the primary jurisdiction doctrine necessitates a stay where the crux of the case rests on whether a device used by the defendant is an ATDS under the TCPA—the *Pieterson* Court declined to apply the doctrine on the basis that the FCC was not evaluating issues of first impression and that court still had the body of law prior to the FCC's (now vacated) 2015 Declaratory Ruling on which it could rely in making decisions of statutory interpretation. The Court also finds support for this premise in the Third Circuit's recent decision in *Dominguez v. Yahoo, Inc.*, in which the Third Circuit simply interpreted the statute as it had prior to the 2015 Declaratory Ruling. 894 F.3d 116, 119 (3d Cir. 2018).[4] District courts and the Third Circuit continue to adjudicate whether a certain device constitutes an ATDS. *See, e.g.*, *Dominguez*, 894 F.3d at 119; *Fleming*, 2018 U.S. Dist. LEXIS 163120, at *26. The Court sees no reason why it cannot do likewise.

---

[3] In addition to presenting rebuttal on Plaintiff's argument on the Court's competency, Defendant simultaneously argues that Plaintiff waived opposition to application of the doctrine of primary jurisdiction by not addressing the four factors. (ECF No. 20, at 5.) As Plaintiff did address the factors (without needing leave to exceed the Court's page limits), the Court rejects Defendant's waiver argument. (ECF No. 17, at 9.)

[4] There has been some disagreement among courts as to whether *ACA International* invalidated solely the 2015 Declaratory Ruling's approach to ATDS or whether the decision also invalidated the 2003 Order and 2008 Declaratory Ruling. *See Pinkus v. Sirius XM Radio, Inc.*, No. 16-cv-10858, 2018 U.S. Dist. LEXIS 125043, at *18–20 (N.D. Ill. July 26, 2018) (collecting cases); *Fleming v. Associated Credit Servs.*, No. 16-cv-3382, 2018 U.S. Dist. LEXIS 163120, at *25 (D.N.J. Sep. 21, 2018) ("The ACA International discussion is permeated with the notion that the 2015 Ruling is an elaboration of the earlier 2003 and 2008 Orders, and that the appeal of the 2015 Ruling may encompass its reaffirmation of the earlier Orders, even though those Orders had not themselves been appealed.") Even if the Court follows *Fleming* and other courts that conclude previous FCC guidance on an ATDS is invalid, the Court would simply proceed to "look to the statute and its language to make an independent determination as to whether such systems are disallowed under the TCPA." *Fleming*, 2018 U.S. Dist. LEXIS 163120, at *26 (citing *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014)). Thus, either way, this Court is well equipped to apply the statute (and any valid regulations) to the issue at hand, when the time comes.

The second factor supports application of the doctrine. The question at issue—what exactly is an ATDS—is one within the FCC's discretion. "Congress authorized the [FCC] to implement rules and regulations enforcing the TCPA." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) (citing 47 U.S.C. § 227(b)(2)); *see Loebenstein v. Chase Bank*, No. 15-cv-745, 2015 U.S. Dist. LEXIS 95178, at *7–8 (D.N.J. July 22, 2015). "As Congress explained, the FCC 'should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy.'" *ACA Int'l*, 885 F.3d at 693 (quoting 47 U.S.C. § 227(b)(2)(c) and § 227 note, Pub. L. No. 102-243, § 2 (13), 105 Stat. 2394, 2395).

With respect to the third factor, there is a possibility that a decision by this Court on the meaning of ATDS as it relates to the facts here becomes inconsistent with the potential future rulings of the FCC, after it resolves the matters before it. In *Baykeeper*, the Third Circuit associated risk of inconsistent rulings with the frequency of agency involvement, concluding that "agency inaction" in recent years equates with "minimal risk of inconsistent rulings." 660 F.3d at 692. Here, the FCC has been very active in light of the *ACA International* and *Marks* rulings, seeking multiple rounds of comments on many aspects of the TCPA's auto-dialing scheme. Therefore, there is a greater risk that TCPA case law developing now may become inconsistent with future agency guidance. However, the Court has not yet been asked to rule on a TCPA issue as Defendant has yet to file a response to the Amended Complaint. Thus, there is also a possibility that the FCC concludes its review (by announcing rules or guidance) before there is an issue of statutory interpretation presented to the Court, rendering any stay moot and calming concerns about inconsistent rulings.

Finally, with respect to the last factor, the agency is currently and actively looking into the questions at issue here. The extent to which the FCC issues rules and regulations on each of the matters identified in the notices is speculation.

Defendant points this Court to *Buhr v. ADT LLC*, a putative TCPA class action against this very Defendant that it avers would include Plaintiff.[5] No. 18-cv-80605 (S.D. Fla.). The *Buhr* Court stayed the case under the primary jurisdiction doctrine and/or the Court's inherent power to control its docket, but that court provided no legal support for its ruling, other than a text order granting the motion to stay "for all the reasons set forth in the [defendant's] Motion." *Id.* at ECF No. 40. Without more, the *Buhr* ruling is of little assistance to the Court in resolving Defendant's Motion to Stay. The question boils down to this Court's competence to address the issues in this case, and this Court concludes it is so competent.

Some of the factors weigh in favor of application of primary jurisdiction, but abstention "is the exception rather than the rule." *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995). "Federal courts have an obligation to exercise their jurisdiction." *Id.* Because this Court is competent to decide the matters that may eventually be brought by the parties, the Court concludes that "this is not one of those exceptional cases that calls for primary jurisdiction abstention" at this time. *Baykeeper*, 660 F.3d at 692.

**B. Court's Inherent Power to Control its Docket**

Defendant asks this Court to stay this case in an exercise of its own discretion. Upon review of both parties' arguments and the factors identified in the legal standard above, the Court declines to stay the case. First, an indefinite stay prior to discovery of an otherwise straightforward case between just two parties would prejudice Plaintiff. It is not clear when the

---

[5] Defense counsel in this case appears to be the same as defense counsel in *Buhr v. ADT LLC*.

FCC will issue any new guidance relative to the issues here, especially in light of the FCC's most recent notice just weeks ago seeking further comment. *See supra* note 1. As one court evaluating this exact issue pointed out, "the FCC has not indicated whether it will pursue a formal rulemaking or some other proceeding following the collection of comments on this issue." *Gould v. Farmers Ins. Exch.*, No. 17-cv- 2305, 2018 U.S. Dist. LEXIS 131508, at *4 (E.D. Mo. Aug. 6, 2018) (denying defendants' motion to stay pending rulemaking from the FCC post-*ACA International*). Second, Defendant does not face any "clear case of hardship or inequity" by moving forward with discovery and alternative dispute resolution. Defendant argues that "[a] rush to judgment is no substitute for reasoned decision-making with the benefit of the expert agency's rulings" (ECF No. 20, at 11), but this case is far from any judgment on the merits.

Defendant has yet to file an answer to Plaintiff's Amended Complaint and no fact discovery has been conducted. Defendant will be able to reassert this issue in the future if anticipated FCC guidance would benefit the Court in deciding the matters put before it at that time. In other words, Defendant has not sufficiently demonstrated that a stay prior to engaging in fact discovery would simplify the case. That is because the purpose of the stay would be to await guidance from the FCC, but whatever that guidance may be does not materially alter the facts of the case. Enabling the case to proceed to fact discovery but allowing the motion to be re-asserted thereafter quells Defendant's concern that it will have to "defend this action twice (once before the FCC's rulings; once after)." (ECF No. 20, at 9.)

The Court agrees with Plaintiff that "regardless of what the FCC's future rules may say about the definition of an ATDS," Plaintiff is entitled to discovery on Defendant's

telecommunication devices.[6] (ECF No. 17, at 8.) "[A] stay is not prudent at this time because, at a minimum, discovery of the nature of [defendant's] calling system and [its] contacts with [plaintiff] is required before any definitive legal standard under the TCPA can be applied to [defendant's] conduct herein." *Somogyi v. Freedom Mortg. Corp.*, No. 17-cv-6546, 2018 U.S. Dist. LEXIS 129697, at *3 (D.N.J. Aug. 2, 2018); *see also Sieleman v. Freedom Mortg. Corp.*, No. 17-cv-13110, 2018 U.S. Dist. LEXIS 129698 (D.N.J. Aug. 2, 2018) (denying request to stay pending forthcoming FCC interpretation of an ATDS). As the District of New Jersey explained:

> Since the statutory definition of an ATDS (as opposed to the FCC's interpretation of an ATDS) was not questioned in either *ACA International* or *Dominguez*, the Court finds it is unnecessary to issue a stay at the present time. Whatever guidance the FCC may issue in the future will not alter the statutory definition of an ATDS. In other words, telephone dialing equipment that "has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator" qualifies as an ATDS today, just as it will following any future FCC guidance."

*Somogyi*, 2018 U.S. Dist. LEXIS 129697, at *11–12. In fact, if this Court were to stay the case pending resolution of FCC proceedings, the parties would then have to commence discovery following such resolution, which would further extend the case.

Because the requested stay focuses on the applicable law, and not the facts, this Court takes the same approach as *Somogyi* with respect to docket management in that, "[a]t the conclusion of fact discovery, if appropriate, [Defendant] may renew its motion for a stay if the FCC has not issued its new order or regulations in response to *ACA International*." *Id.* at *12 n.5.

---

[6] Defendant attempts to obviate factual discovery (or at least challenge factual allegations in Plaintiff's Amended Complaint) by attaching declarations from its attorney and a representative of its corporation explaining Defendant's calling platforms. (See Decls. ECF Nos. 14, 15.) In light of the fact that Defendant has yet to answer Plaintiff's Amended Complaint, the Court concludes it is not appropriate to put the case on hold indefinitely based on Defendant's sworn factual statements when Plaintiff has had no opportunity to conduct discovery on its claims.

The fact that Defendant's TCPA litigation in another district was stayed has little weight in the Court's decision here for several reasons. *Buhr v. ADT LLC*, at ECF No. 40. First, Plaintiff chose to file her case as the sole plaintiff, so whatever case management happens in the putative class action in another district should carry no more weight in this Court than any other case management decision by any other out-of-circuit district court. Second, this Court is unable to extrapolate much from the Southern District of Florida's decision to stay that case because that court granted the stay in a short text order. *Id.* It is entirely unclear if that court based its reasoning on the doctrine of primary jurisdiction or its inherent power to control its docket. Based on the Court's independent review of the parties' arguments, the Court joins the large majority of district courts that have concluded that it is appropriate for the parties to advance the case without waiting for post-*ACA International* agency guidance.[7]

## V.     CONCLUSION

In sum, the Court concludes that the doctrine of primary jurisdiction is not applicable here because the issue likely to be presented at a later time, a legal question of statutory interpretation, is within the conventional experience of judges. The Court also concludes that the entry of a stay prior to fact discovery is inappropriate. Therefore, for the reasons set forth above, Defendant's Motion to Stay is **DENIED**.

---

[7] Several district courts have analyzed motions to stay pending FCC guidance on ATDS post-*ACA International*. Two courts in this circuit have addressed the issue, and both have denied requests for stays. *Sieleman*, 2018 U.S. Dist. LEXIS 129698; *Somogyi*, 2018 U.S. Dist. LEXIS 129697. The only court to have analyzed this issue in the Eighth Circuit denied the request to stay. *Gould*, 2018 U.S. Dist. LEXIS 131508. While the Southern District of Florida did grant the motion to stay in *Buhr*, the court also wrote a detailed memorandum order denying a motion to stay. *Powell v. YouFit Health Clubs Ltd. Liab. Co.*, No. 17-cv-62328, 2018 U.S. Dist. LEXIS 163747, at *4 (S.D. Fla. Sep. 24, 2018) ("[O]ther than Defendant's assertions that an interpretive ruling by the FCC is expected by late 2018 or early 2019, there is no indication that the FCC will in fact issue a ruling by a certain date or even within a certain timeframe."). *But see Eady v. Enhanced Recovery Co., LLC*, No. 3:17-cv-1008, 2018 U.S. Dist. LEXIS 143199, at *2 (M.D. Fla. Aug. 23, 2018) (granting unopposed motion to stay).

**IT IS FURTHER ORDERED** that, in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A),8 Federal Rule of Civil Procedure 72(a), and Local Civil Rule 72.C.2, the parties are allowed fourteen (14) days after the date of service of this Order to file objections to the determinations made herein, which shall specifically designate the parts of the order objected to and the basis for the objection. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file a timely objection shall constitute a waiver of any appellate rights.

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: October 22, 2018

cc: All counsel of record by Notice of Electronic Filing

---

[8] Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), the Magistrate Judge may "hear and determine any pretrial matter pending before the court, except" those enumerated in the statute. As the First Circuit explained, this provision enables a Magistrate Judge to determine a motion to stay so long as the motion "is not dispositive of either the case or any claim or defense within it." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13–14 (1st Cir. 2010); *see also SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013); *OSHA Data/CIH, Inc. v. U.S. Dep't of Labor*, 220 F.3d 153, 159 n.14 (3d Cir. 2000); *In re Milo's Kitchen Dog Treats Consol. Cases*, No. 12-cv-1011, 2013 U.S. Dist. LEXIS 176484, at *4 n.2 (W.D. Pa. Dec. 17, 2013) ("It is well-settled that a motion to stay is a non-dispositive matter and appropriately ruled upon by a federal magistrate judge.").